# CHARLESTON.

## DONAHOE v. FACKLER.

### February 23, 1875.

1875.
January Term.

1. T. D. and others file a bill, alleging that certain parties, therein named, were the owners of a tract of land, as the heirs at law of M. A., and pray that the same may be sold, as incapable of partition, and a sale is accordingly made. More than six years afterwards the same parties file an amended bill, alleging that the same parties own said land as the devisees of L. A., and not as heirs at law of M. A., as alleged in their original bill—the amounts of their interests being somewhat different—and pray that the sale may not be confirmed. The purchaser in the meantime, although the sale had not been reported or confirmed, had taken possession of said land, and made valuable improvements, and paid the whole or a larger part of the purchase money.—HELD:

That the fact, if such it be, that the same parties own the land as devisees, and not as heirs at law, is no sufficient objection to confirming the sale, there being no other objection made, or shown thereto, and as the proceeds of sale can be distributed among the parties in interest, in the proportion in which they hold said land as devisees.

2. It is premature and erroneous to adjudicate and decide questions which are not properly presented in the pleadings, and to decree the payment of money by one party to another, when no such relief is sought or desired, and the proper parties are not all before the court.

3. It is premature and erroneous to decree an account to be taken of money received by a deceased party, when his personal representative is not before the court, upon proper process.

Appeal and *supersedeas,* granted on the petition of James M. Gray, to two several decrees of the circuit court of Putnam county, rendered on the 15th day of December, 1869, and the 24th day of October, 1873. The

32

complainants were Thomas M. Donahoe and others, and the respondents Wiley Fackler and others. The opinion of the Court contains a sufficient statement of the case.

The Hon. James H. Ferguson, then judge of the circuit court of Cabell county, presided at the rendition of the decree of December 15, 1869, and the Hon. Joseph Smith, judge of said circuit court of Putnam, presided at the rendition of the decree of October 24, 1873.

*Smith & Knight* and *William H. Hogeman* for the appellant.

*William A. Quarrier* and *J. W. English* for the appellees.

PAULL, JUDGE.

In August, 1858, Thomas M. Donahoe and others, plaintiffs, filed their bill in the circuit court of Putnam county, stating that certain persons therein named consisting of Hugh R. Austin, Alexander M. Austin and others, were the children and heirs at law of one Morris Austin, deceased, who had died seized and possessed of a large tract of land, then lying in the county of Kanawha, but now in the county of Putnam, and containing from seven to eight hundred acres; that the same was unimproved to any considerable extent, and is not susceptible of a partition which would be advantageous to the interests of the parties, and that the shares which would fall to the infant defendants would be almost valueless; in consideration whereof the bill prays that said land may be sold and distribution made of the proceeds of said sale among the parties thereto entitled, and for general relief. A guardian *ad litem* was appointed for the infant defendants, who answered the bill, and testimony was taken to support its allegations. The court being satisfied, by the evidence, that it was for the mutual interest of all parties that the land should be sold, entered a decree, in September, 1858, directing a sale, and appoint-

ing James W. Hoge and Andrew Parks special commis-sioners to make sale of said land, on the terms expressed in said decree. This decree was subsequently modified, at the instance of the commissioners, as to the terms of sale, and another decree entered at the April term, 1859, directing said commissioners to make sale, &c., but before receiving any money under this or the former decree, to execute and file with the clerk of the court bond with sufficient security, in the penalty of $600, conditioned according to law.

The next proceeding in court in this cause, which is found in the record, is the filing of a petition by James M. Gray, in November, 1865, alleging that a sale was made of said land by said Hoge & Parks, commissioners, as aforesaid, pursuant to the decree; that said sale was made on the 10th day of September, 1859, and that said Gray became the purchaser of said land, at the price or sum of $6,568.20; that he paid $300, required to be paid in cash, and gave his bonds for the balance of the purchase money, in equal instalments, in one, two and three years, with interest; that he had long since paid off all that was due on said bonds, nearly all of which was paid to said commissioners, and the balance to the parties entitled thereto, and files the bonds receipted by said commissioner, with his petition; that he had never received a deed for said land; that Andrew Parks had departed this life, and that said Hoge be required to answer, and to execute to said Gray a good and sufficient deed for said land.

The next proceeding we find in the record is the filing of an amended bill by the plaintiffs, in May, 1866, referring to the original bill and to the decrees appointing Hoge and Parks commissioners to sell said land, and to the petition of James M. Gray, alleging that said land was sold, and the purchase money all paid, yet no report is found among the papers of said cause showing that a sale had ever been made, and that no order had been

entered in said cause confirming said sale, or directing the collection of the purchase money. The amended bill then alleges that the parties who were said in the original bill to have been the heirs at law of Morris Austin, and as such entitled to said tract of land, it has been since ascertained, are in truth and in fact the devisees of said land under the will of Letitia Austin, his wife, who was entitled to the same upon the death of her husband, who did not own the land, and in view of these facts, the amended bill prays that the sale made by said commissioners be not confirmed, but set aside and held for nought, and for general relief. It would seem from the bill that the same parties still own this land now as devisees of Letitia Austin, who were alleged formerly to have owned it as heirs at law of Morris Austin, but the amount of their individual interests is not exactly the same. An order of publication is filed as to the nonresidents and exhibits of the bill made.

We have next the answer of James M. Gray to this amended bill, filed in May, 1867, in which he refers to his petition, and again alleges that a sale was made at which he became the purchaser, that he had paid off and discharged to said Hoge and Parks, the commissioners of sale, the whole amount of the purchase money, less the amount paid to some parties in interest, and was long since entitled to his deed; that he is not informed whether any report of sale was made or not, and that that is a matter in which respondent is powerless, and with which he has nothing to do, and denying that the plaintiffs now hold said land as devisees, and prays that the sale be confirmed and a deed ordered to be made.

Next we have the answer of James W. Hoge, one of the commissioners, filed on the 14th day of December, 1869, to the petition of James M. Gray, and to the amended bill, and to which there is filed a general replication. In his answer he admits the appointment of himself and Parks as commissioners; that the sale was

1875.
January Term.

Donahoe
v.
Fackler.

made, in accordance with the terms, to James M. Gray, and that he cannot explain why a report was not made of the same to the court; that he had always believed that said report had been made; that the purchase money was paid by said Gray to himself and Parks; but that whatever payments were made on the bonds executed by Gray were made to himself and to Andrew Parks, separately, and none of them were joint payments, and that on the first bond he received, on the 15th of September, 1860, the sum of $1,372; that $325 was paid by Gray to Thomas P. Donahoe, a part owner of the land, and that $197 was paid to J. P. Austin, also a part owner of said land, and the balance of said money, including the amounts due on the last two bonds, if indeed they have yet been fully paid off, was paid to Andrew Parks, and that no portion thereof was received or used by respondent. Admitting his liability for the sum of $1,372 he denies that he is liable for any other sum, for the reasons set forth in his answer. The answer of John E. Timms, the guardian *ad litem* for the infant defendants, is also filed to the amended bill.

Such is an outline of the somewhat singular history of this case, and of its condition on the 15th day of December, 1869.

Upon the case as now presented, and as it thus stood at the last named date, to-wit, on the 15th day of December, 1869, the court entered a decree reciting the fact of a sale, and the particulars connected therewith as hereinbefore noted, and that it being conceded by the parties that the said Gray took possession of the said land under his purchase, and has made permanent, expensive and valuable improvements thereon, and the court, being satisfied that under all of the circumstances, full justice cannot be done to all of the parties without a confirmation of said sale, therefore confirmed said sale to said Gray, the purchaser.

*Second.* The decree, reciting that it appearing to the court that no report of said sale having been made by the commissioners and no bond given by them, and no order of confirmation having ever been made, declares that all of the payments made by said Gray to the commissioners, except the cash installment of $300, were unauthorized and illegal, and that he is, therefore, entitled to no credit therefor on the purchase money aforesaid.

*Third.* The decree declares that the parties to the original bill are entitled to said land as the devisees of Letitia Austin, deceased, and directs that the proceeds of sale be distributed among them in the proportion that the said lands were devised to them under said will, and finally directing an account to be taken of certain matters therein expressed and contained. From this decree, as well also as a decree made on the 24th day of October, 1873, an appeal has been taken to this Court by said James M. Gray.

And *first,* in regard to the confirmation of the sale : The only parties opposing the sale are the parties to the original and amended bill, the owners of the land in question. Do they present any good and sufficient reason in a court of equity why the sale should not be confirmed ? It was made at their special instance and request, on the ground that the land could not be partitioned, but should be sold, and the proceeds divided. The sale was accordingly made ; some of said parties were present at the time, and have received from the purchaser themselves a part of the purchase money. They do not complain that the sale was not fairly made, or that the price was inadequate, or anything whatever which impeaches its character. But more than six years after said sale was made, and the purchase money paid by the purchaser to the commissioners of sale, and to two of the plaintiffs, whether legally paid or not, and after the purchaser was in possession and made valuable improvements, they file an amended bill, alleging that they have discovered that they have title to said land as the

devisees of said Letitia Austin, and not as the heirs at law of Morris Austin, as they had supposed when filing the original bill; and for this reason they pray that the sale may not be confirmed, and that they be allowed to hold and keep the land as such devisees, not asking for another sale. Now, conceding this to be so, does the mere fact that they now hold the lands as devisees, and not as heirs at law, furnish a sufficient reason for depriving the purchaser of his land under the circumstances now surrounding this case? The parties to the original bill are the same as the parties to the amended bill; and by the former they sought and obtained a sale of the land. This was their sole object. A change in the nature of their ownership of this land would not affect the object had in view by their original bill, but would only affect the proportions somewhat to which they would be entitled in the distribution of the proceeds of sale; and these proceeds can still be paid to them as devisees, instead of to them as heirs at law. The fact that this amended bill was not filed for several years after the original bill can make no difference. The parties in interest are still the same; and by their mistake, if such it was, the purchaser, after being for years in possession of the land, and making valuable improvements, and paying the purchase money, has been involved in his present condition and trouble. If, then, under these circumstances, and likewise the uncertainty (to say the least of it) hanging over the question as to his being required to repay the purchase money, he chose, as he has done, to have this sale confirmed, we think he was justly and equitably entitled to it. It is said, however, that the court will protect the interests of infants. Their land, as owned by them and the other parties, was sold under the original bill, in which it was alleged that their shares were so small that if retained as land, they would be almost valueless. Their shares as devisees, or holding under devisees, are very slightly increased. It was proper, therefore, in either aspect, that the land should be sold; and

receiving their share of the proceeds, as devisees, it is not perceived that they are prejudiced. They are before the court by their guardian *ad litem,* and no suggestion is made by him or by the plaintiffs, or by any other party, that there was any unfairness or other circumstances whatsoever connected with the sale why the same should not be confirmed. We think, therefore, there was no error in the decree of the court confirming the sale, and directing the proceeds of sale to be distributed among the parties entitled as devisees of Letitia Austin. Under these views it is immaterial under what title the parties held these lands.

We now pass to notice what is claimed by the appellant, James M. Gray, to be error in the decree of the 15th of December, 1869, to-wit: that the payments made by him of the purchase money to commissioners Hoge and Parks, or either of them, were unauthorized and illegal; and in connection therewith the court directed the said Hoge to re-pay to the said Gray the sum of $1,372, a part of said purchase money admitted to have been received by him.

We think this decision and order of the court in the then condition of the case and state of the pleadings, was entirely premature and unauthorized at the time, and consequently erroneous.

At that time there was not a single party named in the record, nor is there now, who was calling said commissioners, or either of them, to any account, asking what amounts they, or either of them, had received of the purchase money, what disposition they had made of the same, or making any demand, or asking any relief against them, or either of them whatever. Gray is the only party who alludes to the purchase money, and all he says in his petition or answer is, that he bought the land, and had paid most of the purchase money to the commissioners, and prays for a deed; he makes no demand upon them, or either of them, for the purchase money, or prays that the same may be repaid to him.

The plaintiffs, in their bill, say nothing upon the subject.

No question of the liability of the commissioners, or either of them, to any party, is made in the pleadings, touching the purchase money, and no question of the legality or illegality of the payments made to them, directly or fairly raised.

Again, at that time no account had been taken, or even ordered, as to what moneys had been received by said commissioners, or either of them, or what was the state of accounts between them; again, the personal representative of Andrew Parks was not before the court at that time; he was a proper party. It is true that some time previous an order was entered making John R. Mumaugh administrator of said Parks, a party defendant, but there is no order directing service of process upon him, and none seems ever to have been made. For these reasons any decision upon these matters was premature and erroneous.

This decree further provides for a reference to a master to take an account of the amount of the purchase money paid by said Gray upon his bonds to said Parks and when and how paid. This order being made when the personal representative was not before the court, was premature and erroneous. His presence was essential to the proper taking of said account.

The master proceeded to take an account of the matters directed by said decree, including, among other things, the amount of purchase money due from said Gray, and made his report to the court. Numerous exceptions were made to this report, and one was that the amount of purchase money reported due from Gray was erroneous. The court, without passing upon the exceptions, recommits the same to the master, and before the amount of said purchase money has been ascertained and reported, enters a decree on the 24th day of October, 1873, directing the said James M. Gray, to pay the amount of purchase money due from him to the receiver

33

of the court within sixty days, and if he fails to do so a special commissioner is appointed to collect it.

This decree is also clearly erroneous.

The matters so earnestly discussed before this Court, touching the validity of the payments made by Gray, raise a question of much interest, which should be fairly and fully presented by proper pleadings, that the principles of law arising thereon may be properly adjudicated, and the rights and liabilities of all parties properly ascertained.

With these views of this case, that part of said decree of the 15th of December, 1869, which confirms the sale of said land to said Gray, and the payment of the cash installment of $300, and the distribution of the proceeds of sale among the parties entitled thereto, as devisees under the will of Letitia Austin, is hereby affirmed, (this Court deciding no other questions), and all subsequent orders and decrees made in said cause, are hereby set aside and annulled, with costs to the appellant; and this Court proceeding to render such decree herein, as the court below ought to have rendered, doth adjudge, order and decree that this cause be remanded to the circuit court of Putnam county, with leave to the parties, or any of them, so to amend their pleadings, and have process issued thereon and served, in order that proper inquiries may be directed, and proceedings had to adjudicate all the questions properly arising in this cause, connected with the interests or liability of the parties, or any of them.

The other Judges concurred.

DECREES AFFIRMED, IN PART, AND REVERSED, IN PART, AND CAUSE REMANDED.